## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **RUTH MILLER and** | : | |
| **GALEN G. SWINGEN,** | | |
| | : | |
| **Plaintiffs** | | **CIVIL ACTION NO. 1:19-49** |
| | : | |
| **v.** | | **(JUDGE MANNION)** |
| | : | |
| **AARP SERVICES, INC.,** | | |
| **AARP, INC., AARP OF THE** | : | |
| **VIRGIN ISLANDS, INC., GRUPO** | | |
| **COOPERATIVO SEGUROS** | : | |
| **MULTIPLES, COOPERATIVE** | | |
| **DE SEGUROS MULTIPLES OF** | : | |
| **PUERTO RICO, OVERSEAS** | | |
| **INSURANCE AGENCY, INC.,** | : | |
| **SEDGWICK CLAIMS** | | |
| **MANAGEMENT SERVICES,** | : | |
| **INC., VERICLAIM, INC., and** | | |
| **RUSSELL RAGSDALE,** | : | |
| | | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Pending before the court are motions to dismiss the plaintiffs'

complaint filed on behalf of defendants AARP, Inc., and AARP Services, Inc.

("AARP") (Doc. 21), defendants Sedgwick Claims Management Services,

Inc., Vericlaim, Inc., and Russell Ragsdale ("Adjusters") (Doc. 23), and

defendants Grupo Cooperativo Seguros Multiples ("GCSM") and Cooperativa de Seguros Multiples of Puerto Rico ("CSM") (Doc. 29).[1]

By way of relevant background, plaintiffs filed this action claiming that defendants' wrongful actions, individually and collectively, prevented them from receiving full benefits due to them under their homeowner's insurance policy after Hurricane Irma devastated the island of St. Thomas in the Virgin Islands on September 6, 2017. Plaintiffs have brought claims for breach of contract (Count 1), breach of the duty of good faith and fair dealing (Count 2), bad faith (Count 3), breach of fiduciary duty (Count 4), fraud in the inducement (Count 5), unfair trade practice (Count 6), misrepresentation (Count 7), and negligence (Count 8) against defendants AARP, GCSM, CSM and Overseas. In addition, plaintiffs have brought claims for breach of contract (Count 9) and tortious interference with contractual relations (Count 10) against the Adjusters.

Each of the motions to dismiss has been brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure which authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), the court must "accept all factual allegations as true,

---

[1] Overseas Insurance Agency, Inc., ("Overseas") is also named as a defendant in this matter. Overseas does not currently have a motion pending before the court.

construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (*quoting* Phillips *v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, *Twombly*, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted).

## I.     Motion to Dismiss by AARP Defendants

In seeking dismissal of plaintiffs' complaint, AARP argues that plaintiffs were required to exhaust their administrative remedies prior to bringing the instant action. Specifically, plaintiffs allege in their complaint that, during the

adjustment of their insurance claims, the Office of the Commissioner of Insurance of Puerto Rico ("Puerto Rico Insurance Commissioner") placed Real Legacy Assurance Company, Inc. ("Real Legacy")[2] under regulatory supervision. On January 18, 2019, plaintiffs allege that the Court of First Instance of San Juan issued an order to Real Legacy to liquidate its assets under court supervision. The defendants' materials provide that, under Article 40.210 of Puerto Rico's Insurance Code, once a court declares an insurance company to be insolvent, all claims against the insurer must be consolidated in the liquidation administrative forum before the Puerto Rico Insurance Commissioner to allow the liquidating court to ensure that the insureds' claims are paid by the Miscellaneous Guarantee Insurance Association ("MGIA"). *See* 26 L.P.R.A. §§4009 (allowing Puerto Rico Insurance Commissioner to liquidate insolvent insurers pursuant to liquidation order); 4015 (Puerto Rico Insurance Commissioner, following liquidation order "take[s] immediate possession of the assets of the insurer"

_____

[2] Real Legacy has not been named as a defendant to this action. Real Legacy Assurance Company, Inc., has been identified as one of two companies owned by defendant Seguros Multiples, a company organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business therein that transacts business in the U.S. Virgin Islands.

and administers them subject to the "exclusive general supervision of the Receivership Court"); 3802, 3808 (describing the MGIA).

On March 1, 2019, the Virgin Islands Commissioner of Insurance ("VI Commissioner") was appointed by order of the Superior Court of the Virgin Islands as the ancillary receiver of Real Legacy in the Virgin Islands. As ancillary receiver, the VI Commissioner "ha[s] the same powers . . . and . . . duties" as it does under a domestic liquidation proceeding. V.I. Code Ann. tit. 22 §1263(a). As in Puerto Rico, the Virgin Islands Insurance Code vests in the VI Commissioner jurisdiction over all of the liquidating insurer's property, V.I. Code Ann. tit. 22 §1256(a), and activates coverage of the Virgin Islands Insurance Guarantee Association ("VIIGA") (the entity that pays claims), V.I. Code Ann. tit. 22 §237. Under the VI Code, residents in the Virgin Islands can elect to file their claims against the liquidating insurer either with the ancillary receiver (the VI Commissioner) or with the liquidating forum in the insurance company's domicile which, in this case, would be Puerto Rico. V.I. Code Ann. tit. 22 §1265.

AARP argues that because the Virgin Islands Insurance Code and/or the Puerto Rico Insurance Code provide exclusive administrative remedies, which must be exhausted for plaintiffs to recover against Real Legacy for their alleged underpayment under the applicable policy, their complaint

should be dismissed as to all claims against all defendants herein. In considering AARP's argument on administrative remedies, they have cited to no provision of either the Puerto Rico or Virgin Island statutes which indicates that there are remedies which the plaintiffs must exhaust as to them prior to bringing claims against them. All of the statutes cited by AARP are applicable only to a liquidated insurer which, in this case, does not include the moving defendants, but only Real Legacy.

Further, the Virgin Islands statutes regarding the liquidation of an alien insolvent insurer appear to contemplate recovery from parties other than the liquidated insurer prior to recovering from the VIIGA. *See* Title 22 V.I.C., §§241(a)[3] (Nonduplication of Recovery), 234(c)[4]. These provisions provide that the insured must first exhaust rights under the policy against an insurer, as opposed to an insolvent insurer, before payment will be made by the

---

[3] Any person having a claim against an insurer under any provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim pursuant to this chapter shall be reduced by the amount of such recovery under the claimant's insurance policy.

[4] Defining a "covered claim" as:
'Covered claim' means an unpaid claim or judgment, including an unearned premium claim, that has been timely filed with the liquidators as provided in section 237 of this title, which arises out of and is within the coverage of an insurance policy to which this chapter applies, and which is issued by an insurer if such insurer becomes an insolvent insurer . . .

- 6 -

VIIGA on a covered claim on behalf of an insolvent insurer. Any payment by the VIIGA on behalf of the insolvent insurer would then be reduced by the amount recovered against any other insurer under the policy. Thus, it appears, as the plaintiffs argue, that the Act is written to pay claimants from VIIGA funds, if they are still owed a balance under a covered claim, after any recovery from a non-insolvent insurer. On this basis, the court is not convinced that the plaintiffs were required to have exhausted their administrative remedies against Real Legacy prior to having brought the instant action against the moving defendants. As such, the moving defendants' motions to dismiss will be denied on this basis.

In addition to the administrative remedy argument, the AARP defendants argue that plaintiffs' claims asserting breaches of policy-based duties in Counts I, 2, 3, 4 and 8 fail because plaintiffs cannot establish that AARP was a party to the contract, i.e., the policy.

The elements of the formation of a valid contract in the Virgin Islands include:

> a "bargain in which there is a mutual assent to the exchange, and consideration." *Valentin v. Grapetree Shores*, 2015 WL 13579631, at *3 (V.I. Super. June 20, 2015 (quoting *Morales v. Sun Constructors, Inc.* 541 F.3d 218, 221 (3d Cir. 2008)) (additional citations omitted). A party's assent to a bargain "is not measured by subjective intent, but by outward expression." *Id.* (citing *Morales*, 541 F.3d at 221; *Fitz v. Islands Mech. Contractor, Inc.*, 53 V.I. 806, 820 (D.V.I. 2010)).

- 7 -

*Sunshine Shopping Center, Inc. v. LG Electronics Panama, S.A.*, 2018 WL 4558982 (D.V.I. 2018).

At the pleadings stage, it is not necessary for the plaintiffs to demonstrate every detail involving breach of an insurance policy. It is sufficient for the plaintiffs to plead that defendant had an insurance program under which a policy was sold to plaintiffs and defendant received payment. *Charleswell v. Chase*, 308 F.Supp.2d 545, 560 (2004).

In this case, the plaintiffs provide that they have alleged that AARP had an insurance program through which a policy was sold to plaintiffs, and AARP received payment for that policy by receipt of a percentage of all premiums plaintiffs paid for their homeowner's policy. Moreover, plaintiffs have alleged that the policy they purchased was an insurance product developed and produced by AARP, and that their policy was sold as part of the AARP Property & Casualty Insurance Program. According to plaintiffs, the AARP logo was on nearly every document they received regarding their policy, and that, in order to obtain their policy, AARP required one of the plaintiffs to be an AARP member.

Plaintiffs provide that they have also sufficiently alleged that Real Legacy was the agent of AARP, such that AARP can be held liable on the contract related claims. Here, the plaintiffs must plead facts regarding the

parties' conduct: if the principal has the ability to control the conduct of the alleged agent, then an agency relationship may be inferred. *See Roberts v. Gonzalez*, 495 F.Supp. 1310, 1314 (D.V.I. 1980) ("A principal has the right to control the conduct of the agent with respect to matters entrusted to him." (quoting Restatement (Second) of Agency §14)) (no agency relationship where alleged principal could not control alleged agent's conduct); *see also Oran v. Fair Wind Sailing, Inc.*, 2009 WL 4349321, at *10 (D.V.I. Nov. 23, 2009) (an agent can "bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third parties." (internal quotation marks and citation omitted)).

The plaintiffs provide that they have alleged that AARP developed and produced the insurance policy that they purchased; AARP received a percentage of premiums for the policy; AARP would only allow its insurance products to be sold to its member; AARP placed its logo on its insurance product and all documents and communications related to it; AARP "got on" Real Legacy to make sure that members who had AARP insurance had their needs addressed; AARP made sure that people with hurricane damage claims involving Real Legacy got what they needed and made sure that members with a Real Legacy policy were taken care of properly. Plaintiffs further provide that they have alleged that AARP directed and/or controlled

the conduct of Real Legacy and offered specific factual bases demonstrating that control.

At this early stage of the proceedings, the court finds that the allegations set forth by the plaintiffs are sufficient to allow them to proceed with their contract-based claims in Counts 1-4 and 8 of their complaint. As such, AARP's motion will be denied on this basis. However, it will be for the plaintiffs to establish each element of their contract-based claims at the summary judgment stage at the close of discovery.

As to Counts 5 (fraud in the inducement) and 7 (misrepresentation), the AARP defendants argue that, even assuming the truth of these allegations, the plaintiffs' claims fail because they have failed to plead their fraud- and misrepresentation-based claims with particularity. *Ringo v. Southland Gaming of U.S. Virgin Islands, Inc.*, 2010 WL 7746074, at **3-4 (V.I. Super. Ct. Sept. 22, 2010); *see also In re Rockefeller Cntr. Props., Inc. Sec Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (quoting Fed.R.Civ.P. 9(b)). Specifically, the AARP defendants argue that the plaintiffs must plead specific facts surrounding the timing of the representations, what the defendants knew at the time, and other particular facts. *See Ringo*, 2010 WL 7746074 at **3-4 (dismissing fraud claim where plaintiff "merely alleges that [defendants] fraudulently promised . . . to pay Plaintiff three percent (3.0%)

of the net profits without distinguishing which Defendant made which representation and when it was made").

For Count 5, plaintiffs must plead with particularity "(1) a specific false representation of material fact, (2) knowledge of its falsity by the person who made it, (3) ignorance of its falsity by the person to whom it was made, (4) the maker's intention that it should be acted upon, and (5) detrimental reliance by the Plaintiff." *Nicholas v. Wyndham Int'l Inc.*, 301 F.Supp.2d 407, 409 (D.V.I. 2002) (citation omitted); *see also Fitz v. Islands Mech. Contractor, Inc.*, 2010 WL 2384585, at *9 (D.V.I. June 9, 2010) ("In the Virgin Islands, a fraudulent inducement claim has essentially the same elements as common law fraud.").

Similarly, for Count 7, a misrepresentation claim "requires proof of the same elements as legal fraud with one additional requirement: a showing that [Defendants] failed to exercise reasonable care in communicating the information.'" *Southland Gaming of U.S. Virgin Islands, Inc.*, 2010 WL 7746074, at **4-5 (quoting *In re Tutu Water Wells Contamination Litig.*, 78 F.Supp.2d 456, 464 (D.V.I. 1999)); *Addie v. Kjaer*, 2009 WL 453352, at *3 (D.V.I. Feb. 23, 2009) (dismissing negligent misrepresentation claim where plaintiff failed to allege that defendants made a representation of fact that was false at the time it was made, and that defendants purposefully intended

to breach contract, reasoning that plaintiffs' complaint essentially amounted to an allegation that defendants "failed to fulfill their future promise").

With respect to Counts 5 and 7, plaintiffs' complaint alleges that AARP solicited and offered insurance as part of the AARP Property and Casualty Insurance Program and required at least one of the plaintiffs to be a member in order to purchase the policy. Plaintiffs allege that AARP never intended to honor the insurance coverage in the policy or any of the renewal policies sold to the plaintiffs, and knew this lack of intention when these false representations were made to plaintiffs. Despite this, plaintiffs allege that AARP accepted payment for the policy it offered, but never intended to honor, by receiving a portion of the premium payments for the policy. Plaintiffs' complaint alleges that AARP made these false misrepresentations prior to their purchase of the policy at issue and each time they renewed the policy. Plaintiffs allege that AARP's actions were an inducement to them to purchase the policy, and that they reasonably relied on AARP's representation that AARP had insured their home against windstorms due to the prominent placement of the AARP logo on all documents related to their policy and AARP's statement that it developed and produced the policy. Plaintiff's alleged that their reasonable reliance upon the misrepresentation that AARP had sold them their insurance policy and would honor it caused

them to suffer pecuniary loss when AARP failed to provide coverage as outlined in the policy or to timely and properly adjust claims. At this stage, the court finds the plaintiffs' allegations sufficient to proceed on the fraud in the inducement and misrepresentation claims. Thus, AARP's motion to dismiss Counts 5 and 7 of the complaint will be denied.

Finally, the AARP defendants argue that Count 6 (Unfair Trade Practice) of the plaintiffs' complaint fails to state a claim. Virgin Islands Deceptive Trade Practice Act, V.I. Code Ann. Tit. 12A §101 ("DTPA"), prohibits "person[s]" from "engag[ing] . . . in the sale . . . of any consumer goods or service[.]" *Id.* In order to state a such a claim, the plaintiffs must establish that "(1) defendant is a 'person' under the statute; (2) defendant is engaged in a deceptive or unconscionable trade practice; and (3) the deceptive or unconscionable trade practice occurred during the sale, lease, rental or loan of any consumer goods or services." *Gov't of U.S. Virgin Islands v. Takata Corp.*, 2017 WL 3390594, at *28 (V.I. Super. Ct. June 19, 2017).

Upon review of plaintiffs' complaint, while incorporating the prior 164 paragraphs of the complaint, plaintiffs in a most cursory fashion allege "[t]he actions of said Defendants, as described herein, constitute a deceptive or unconscionable trade practice in violation of 12A V.I.C. §101." Such

conclusory allegations are insufficient. As such, AARP's motion to dismiss Count 6 of the complaint will be granted.

## II.    Motion to Dismiss by Adjusters

Plaintiffs' complaint alleges two counts against the Adjusters. In Count 9, plaintiffs allege a claim for breach of contract, and in Count 10, plaintiffs allege a claim for tortious interference with contractual relations. The Adjusters seek dismissal of both counts.

As to the Adjusters, plaintiffs allege that, after their property was damaged by Hurricane Irma, the insurers hired Sedgwick and Vericlaim to adjust their claim under the applicable policy. Plaintiffs allege that Sedgwick and Vericlaim assigned their "employee, agent and/or servant," defendant Ragsdale, to adjust the claim. Plaintiffs allege that Ragsdale inspected the property, prepared a scope of work for repairs, and estimated that the actual cash value of damages totaled $309,000. While plaintiffs agreed with the scope of work, they found Ragsdale's actual cash value deficient because he allegedly used unit pricing that was below the industry standard unit pricing used for the United States Virgin Islands.

Plaintiffs allege that they demanded payment from Real Legacy of the $309,000 which was an undisputed amount of actual cash value damages.

They alleged that Real Legacy paid them $222,243.53 representing the undisputed amount of the actual cash value, less $64,927.43 for recoverable depreciation and $22,500 for the deductible. Plaintiffs claim that Ragsdale, in his capacity as an agent for the insurer, agreed that the disputed amount of additional damages to the property in excess of $309,000 would be determined by submitting the undisputed scope of work to a contractor licensed in the Virgin Islands. The contractor would then prepare an estimate of the total damage to the property by applying actual unit costs in the Virgin Islands to the undisputed scope of work. Plaintiffs allege that they and Ragsdale agreed that the contractor's estimate would be determinative of the value of the damage to the property and would be binding.

Pursuant to this agreement, plaintiffs allege that they hired a contractor to prepare an estimate of the damages to the property. According to the complaint, the estimate totaled $460,743.93. The plaintiff submitted this estimate to Ragsdale in March of 2018.

After Hurricane Irma, plaintiffs allege that Real Legacy, the insurer, incurred significant losses and was underinsured by approximately $70 million. By June 30, 2018, Real Legacy had a negative policyholder surplus of $42 million. Plaintiffs allege that Real Legacy was inadequately capitalized and unable to resolve the claims filed in the Virgin Islands.

On September 25, 2018, plaintiffs allege that Ragsdale informed them that the adjusters had not completed their review of the estimate and would not submit it to the insurers. Subsequently, on September 28, 2018, the Office of the Commissioner of Insurance of Puerto Rico placed Real Legacy under regulatory supervision through a rehabilitation order. Plaintiff's claim was, at that time, one of 82 pending claims in the Virgin Islands that had not been paid.

On November 30, 2018, plaintiffs allege they submitted proofs of loss for the cost of repairs and the estimate directly to the insurers. On December 4, 2018, plaintiffs claim that Ragsdale asked them to provide receipts that had previously been provided and to permit a possible re-inspection by a local adjuster before a proof of loss would be submitted to the insurer. On January 18, 2019, the Court of First Instance of San Juan issued an order converting the rehabilitation process for Real Legacy into liquidation. And, on January 22, 2019, Ragsdale submitted a report and recommendation to the insurer for payment of $151,073.02 to resolve the plaintiffs' claim, as well as for the holdback amount of $64,927.43 on dwelling damages and $3,415.20 on content damages. Plaintiffs allege that they have not received these amounts.

In considering the plaintiff's complaint, the Adjusters initially argue, as did AARP, that the plaintiffs have not exhausted their administrative remedies. As the court found with respect to AARP, the plaintiffs need not have done so prior to bringing the instant action against the Adjusters. As such, this part of the Adjusters' motion to dismiss will be denied.

The Adjusters seek to have Count 9 of the plaintiffs' complaint dismissed arguing that defendant Ragsdale is not a party to the agreement because he entered into it as an agent of Sedgwick and Vericlaim and, in turn, that defendants Sedgwick and Vericlaim are agents of the insurers and are therefore not individually liable for breach of contract based upon the agreement. Plaintiffs respond that defendant Ragsdale was acting on his own behalf when he entered into the agreement and that he benefited from the agreement because it alleviated the need for him and the other adjuster defendants to perform any further work or incur any further expense as part of the adjustment process. Plaintiffs argue that all adjuster defendants were bound by and benefited from the agreement.

Upon review, plaintiffs' arguments are not bore out by the allegations of the complaint. Here, plaintiffs are suing defendant Ragsdale individually for breach of contract based upon the agreement. However, they do not allege that they entered into the agreement with defendant Ragsdale in his

individual capacity. Instead, they allege defendant Ragsdale, who was acting within the scope of his employment, entered into the agreement as an "employee, agent and/or servant" of defendants Sedgwick and Vericlaim.

When an agent enters into a contract on behalf of a disclosed principle, only the principle and the third party are parties to the contract, unless the agent and third party agree otherwise. *See* Restatement (Third) of Agency §6.01 ("When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principle, (1) the principle and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and third party agree otherwise."). If there is no such agreement, an agent who enters into a contract on behalf of a disclosed principle cannot be held liable if the principle fails to perform obligations under the contract. *See id.*, cmt. b.

As an agent of defendants Sedgwick and Vericlaim, the adjusters argue that defendant Ragsdale is not a party to the agreement unless both defendant Ragsdale and plaintiffs agreed otherwise. Plaintiffs have not alleged as much. As such, plaintiffs have failed to state a claim against defendant Ragsdale for breach of contract.

Further as to Count 9, the Adjusters argue that defendants Sedgwick and Vericlaim are not parties to the agreement because they entered as

agents of the insurers. In their complaint, plaintiffs allege that defendants Sedgwick and Vericlaim entered into the agreement "on behalf of [insurers], through Ragsdale." Thus, the allegations of plaintiffs' complaint reflect that defendants Sedgwick and Vericlaim entered into the agreement as agents of Real Legacy, and there are no allegations that defendants Sedgwick and Vericlaim agreed that they would be individual parties to the agreement. Again, plaintiffs fail to state a claim for breach of contract against defendants Sedgwick or Vericlaim in their individual capacities.

In light of the above, the court finds that plaintiffs have failed to adequately allege a breach of contract claim against the Adjusters. As such, their motion to dismiss Count 9 of the complaint will be granted.

The Adjusters argue that Count 10 of the complaint claiming tortious interference with contractual relations is barred by the economic loss doctrine. The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract" and applies notwithstanding the lack of an express contractual relationship between the plaintiff and the defendant. *Whitecap Inv. Corp. v. Putnam Lumber & Exp. Co*., 2013 WL 1155241, at *2, *3 (D.V.I. Mar. 21, 2013) (quoting *Ringo v. Southland Gaming of the U.S.V.I., Inc.*, 2010 WL 7746074, at *6 (V.I. Super. Ct. Sept. 22, 2010)) (additional citations omitted). The

economic loss rule bars tort actions where a plaintiff alleges "only economic damages stemming from a breach of contract claim and has not alleged any physical or property damage." *Ringo*, 2010 WL 7746074 at *6 (citations omitted).

The plaintiffs' claim against the Adjusters for tortious interference is essentially their claim for breach of contract against the insurers. They are seeking to recover from the adjusters the amounts they claim the insurers should have paid them under the policy. The court finds plaintiffs' claim is barred by the economic loss doctrine notwithstanding the absence of privity of contract between them and the Adjusters. *See Whitecap Inv. Corp. v. Putnum Lumber & Exp. Co.*, 2013 WL 1155241 at *3. As such, the Adjusters motion to dismiss Count 10 will be granted as well.

### III.    Motion to Dismiss by GCSM and CSM

As have the other defendants, GCSM and CSM argue that the plaintiff's complaint should be dismissed based upon their failure to exhaust administrative remedies against Real Legacy. The court has rejected that argument as to the other defendants and will do so with respect to these defendants as well.

These defendants further argue that the plaintiffs' complaint should be dismissed because the plaintiffs have failed to establish a contractual relationship between them and GCSM or CSM and have failed to establish an agency relationship between them and Real Legacy. GCSM and CSM argue that all of the claims alleged in the counts against them arise out of a contractual relationship, and that the pillar to the plaintiffs' claims against them is premised in the existence of a contract for which GCSM and CSM owed an obligation to them, and arising out the policy. These defendants argue that the plaintiffs fail to plead sufficient facts to show how GCSM or CSM owed any duty under the policy to investigate, assess, adjust, and pay for claims. They argue that the plaintiffs' reliance on a contractual relationship is undisputed as evidenced by the breach of contract, duty of good faith and fair dealing, of fiduciary duty of misrepresentation claims, but that there are no factual allegations as to the existence of any relationship with GCSM and CSM. In essence, GCSM and CSM argue that plaintiffs contend that they, not Real Legacy, the insuring party at the time, were responsible for denying their claims under the policy. However, defendants argue that they were not contracting parties.

The analysis of the arguments raised by GCSM and CSM parallel those raised by AARP. As to the plaintiffs' contract-based claims in Counts

1-4 and 8, the plaintiffs allege that GCSM and CSM issued insurance policies through their agent, Real Legacy, that had their names and logos prominently displayed on almost all documents associated with the policy including the policy itself. Plaintiffs have alleged that Real Legacy was a wholly owned subsidiary of CSM and a member of GCSM and, as such, these defendants received premium payments through their agent, Real Legacy, that were paid by plaintiffs. According to the complaint, these defendants failed to properly capitalize and reinsure Real Legacy for the risk load they allowed Real Legacy to carry and, when Real Legacy was placed in rehabilitation, they failed to institute and maintain an effective enterprise risk management program and failed to develop and implement successful initiatives to improve the capital of its agent and/or subsidiary, Real Legacy.

As to agency, plaintiffs allege that Real Legacy was the agent of these defendants. It is alleged that Real Legacy was the wholly owned subsidiary of CSM and a member of GCSM and, as such, these defendants controlled Real Legacy. It is alleged that both of these defendants directed Real Legacy to place their names and logos on nearly every document associated with the policy, including the policy itself.

As previously found with respect to AARP, the court finds, at this early stage of the proceedings, plaintiffs' allegations based in contract are

- 22 -

sufficient to proceed. The motion to dismiss brought on behalf of GCSM and CSM on this basis will therefore be denied.

As to Count 5 (Fraud in the Inducement), GCSM and CSM argue that no relationship existed between them and plaintiffs, and that they never engaged in the business of insurance in the Virgin Islands or issued a policy to plaintiffs. Moreover, as to Count 7 (Misrepresentation), GCSM and CSM argue again that there was no contractual relationship upon which to base this claim, and that plaintiffs have not pled facts to establish that they had communications with them, or that these communications were in any way a misrepresentation of certain facts.

Here, plaintiffs have alleged that GCSM and CSM solicited and offered plaintiffs insurance through Real Legacy, their agent, subsidiary and/or member, by placing their names and logos on the policy. These defendants are alleged to have never intended to honor the insurance coverage in the policy or any of the renewal policies they sold to plaintiffs, and knew this lack of intention when the false representations were made to plaintiffs. Despite this, plaintiffs allege that defendants accepted payments for the policy it offered, but never intended to honor through Real Legacy, their agent, subsidiary and/or member.

- 23 -

Further, plaintiffs allege that GCSM and CSM made these false representations prior to plaintiffs' initial purchase of the homeowner's policy and each time they renewed the policy. Plaintiffs allege that these defendants placed their names and logos on the policy being purchased by plaintiffs as an inducement to plaintiffs to purchase the policy and that they relied reasonably on the representation that these defendants had insured their home against windstorms due to the prominent placement of their names and logos on all of the documents related to their policy. Plaintiffs allege that their reasonable reliance upon the misrepresentation that GCSM and CSM had sold them their insurance policy and would honor it caused them to suffer pecuniary loss when these defendants failed to provide coverage as outlined in the policy or to timely and properly adjust claims.

As with AARP, the court finds at this stage of the pleadings, the plaintiffs can proceed with Counts 5 and 7 of their complaint. The motion to dismiss these counts filed by GCSM and CSM will be denied on this basis.

Finally, as to Count 6 (Unfair Trade Practice), GCSM and CSM argue that, without referencing any supporting facts, plaintiffs claim that the actions of defendants were deceptive or unconscionable trade practice in violation of 12A V.I.C. §101. They argue that such a conclusory allegation is

insufficient to state a claim. As discussed above, the court agrees and Count 6 of plaintiffs' complaint will be dismissed.

Based upon the foregoing, an appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNNION**
**United States District Court**

**DATE: March 31, 2021**
19-49-01

- 25 -