DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| **RUTH MILLER and GALEN SWINGEN,**<br><br>    **Plaintiffs,**<br><br> v.<br><br>**AARP SERVICES, INC., AARP, INC., GRUPO COOPERATIVO SEGUROS MULTIPLES, COOPERATIVA DE SEGUROS MULTIPLES OF PUERTO RICO, SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., VERICLAIM, INC., RUSSELL RAGSDALE, and OVERSEAS INSURANCE AGENCY, INC.,**<br><br>    **Defendants.**<br>_____ | 1:19-cv-00049-MEM-EAH |

**TO:**  Pamela L. Colon, Esq.
    *For Plaintiffs*
  Karen Ellis Carr, Esq.
  Eric Roman, Esq.
  Mattie Bowden, Esq.
  Andrew C. Simpson, Esq.
    *For AARP, Inc. and AARP Services, Inc.*
  Ann Cecile O'Neill, Esq.
  Eugenio W.A. Geigel-Simounet, Esq.
    *For GCSM and CSMPR*
  Richard H. Hunter, Esq.
  Joshua D. Lerner, Esq.
  Peter Tepley, Esq.
  Victor G. Sanabria, Esq.
    *For Vericlaim, Sedgwick, and Ragsdale*

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on the Motion for Protective Order filed by

Defendants AARP Services, Inc., and AARP, Inc. (the "AARP Defendants"). Dkt. No. 210.

For the reasons that follow the Court will **GRANT** the motion and enter the AARP Defendants' proposed protective order with the Court's modification.

BACKGROUND

I.   **Plaintiffs' Allegations**[1]

The Complaint in this case was originally filed in Superior Court in August 2019. Dkt. No. 1-1. Plaintiffs Ruth Miller and Galen Swingen alleged that Miller applied for a homeowner's insurance policy in October 2014 for a home they were about to purchase on St. Thomas. *Id*. ¶ 15. Based on the advertising and branding of the insurance policy, Plaintiffs believed that the insurance was provided through the AARP Defendants; in fact, the insurance was through Real Legacy Assurance ("Real Legacy"), a wholly owned subsidiary of Cooperativa de Seguros Multiples of Puerto Rico ("CSMPR"), and member company of Grupo Cooperativo Seguros Multiples ("GCSM"). *Id*. ¶¶ 5, 6, 16-20. Plaintiffs jointly purchased the policy, which became effective on November 25, 2014; they renewed the policy in 2015 and 2016. *Id*. ¶¶ 32-33. The policy included coverage for windstorm losses in the following amounts: $450,000 for a dwelling; $15,000 for an outbuilding; and $30,000 for contents; Plaintiffs timely paid their policy premiums. *Id*. ¶¶ 47-48.

On September 6, 2017, Hurricane Irma caused catastrophic damage to Plaintiffs' property. *Id*. ¶¶ 62-63. Plaintiffs hired two public adjusters to adjust their losses, the first firm estimated damages of $487,000. *Id*. ¶¶ 64-65. After the second adjuster contacted Real Legacy,[2] it hired Sedgwick Claims Management Services, Inc. ("Sedgwick") and its

---

[1] The factual background is taken from Plaintiffs' allegations as stated in their initial Complaint; they do not reflect factual findings made by this Court.
[2] Because the Complaint alleged that Real Legacy was an agent and/or subsidiary of the AARP Defendants, GCSM, CSMPR, and Overseas, all of the actions taken by Real Legacy in

subsidiary, Vericlaim, Inc. ("Vericlaim") to adjust the claim.[3] *Id*. ¶¶ 8, 9, 67. Sedgwick and Vericlaim sent their employee, Russell Ragsdale, to adjust Plaintiffs' claim, but he did not inspect the property until October 2017. *Id*. ¶¶ 68-69. In January 2018, Ragsdale completed his estimate of $309,000, which was inadequate because it used unit pricing below the industry standard unit pricing for the Virgin Islands. *Id*. ¶¶ 70-71. Plaintiffs agreed generally with the scope of the work, but disputed the unit pricing; the Adjuster Defendants had used substantially higher unit pricing for other Hurricane Irma losses. *Id*. ¶¶ 72-73.

In January 2018, Plaintiffs demanded payment of the undisputed amount of actual cash value ("ACV") of damages—$309,000—from Real Legacy; it paid Plaintiffs $222,243.53 (the undisputed ACV of the dwelling and content losses less certain holdbacks and a deductible). *Id*. ¶¶ 75-77. The Adjuster Defendants agreed with Plaintiffs that the disputed amount of damages in excess of $309,000 would be resolved by submitting the scope of work to a Virgin Islands contractor for a dwelling damages determination based on actual unit costs in the Virgin Islands—this determination would be binding on all parties as to the amount of Plaintiffs' dwelling damages. *Id*. ¶ 78. Thus, Plaintiffs hired a contractor to prepare the evaluation, and, in late March 2018, Plaintiffs submitted the estimation of charges of $460,743.93 to the Adjuster Defendants. *Id*. ¶¶ 79-82. For months, the Adjuster Defendants failed to respond to Plaintiffs' submissions and payment demands. *Id*. ¶ 83. In July 2018, Plaintiffs made a formal demand to the Adjuster Defendants for payment of the holdback amount from the initial payment of the ACV, but

---

adjusting the insurance claim were also allegedly imputed to those Defendants. *See e.g.*, Dkt. No. 1-1.
[3] Together, Vericlaim, Sedgwick, and their employee Ragsdale will be referred to as the "Adjuster Defendants."

the Adjuster Defendants again failed to respond for months. *Id*. ¶¶ 85-86. In September 2018, the Adjuster Defendants claimed that they had not completed their review of the contractor's damages determination and refused to recommend additional payment until Plaintiffs produced progress photos and proof of funds spent. *Id*. ¶¶ 95-99.

Because Real Legacy had suffered $110,000,000 in losses and was under-reinsured by $70,000,000, in September 2018, the Office of the Commissioner of Insurance of Puerto Rico placed Real Legacy under regulatory supervision through a Rehabilitation Order. *Id*. ¶¶ 100-102. At the time of the Rehabilitation Order, Plaintiffs' claim was one of eighty-two unpaid pending claims in the Territory. *Id*. ¶ 103-04. On November 30, 2018, Plaintiffs again submitted proofs of loss to the Adjuster Defendants for the undisputed recoverable depreciation that had been withheld in January 2018 and for the balance of the actual cost of repairs owed under the policy. *Id*. ¶¶ 106, 108. By November 2018, the Adjuster Defendants still had not submitted the damages determination for payment to the AARP Defendants, GCSM, CSMPR, and Overseas. *Id*. ¶ 107. On the same day that Plaintiff submitted the proofs of loss to the Adjuster Defendants, Plaintiffs submitted the proofs of loss, the original damages determination from the contractor, and the factual history of the claim directly to Real Legacy and demanded payment. *Id*. ¶ 109. In December 2018, the Adjuster Defendants required more receipts and a possible reinspection by a local adjuster before they would submit the proofs of loss to Real Legacy and/or issue further payments. *Id*. ¶ 110.

In January 2019, the Court of First Instance of San Juan ordered Real Legacy to liquidate its assets under court supervision. *Id*. ¶ 111. The Adjuster Defendants delayed submitting proofs of loss to Real Legacy until January 22, 2019, indicating that payment of $151,073.02 and the holdback amount should be made to conclude the claim. *Id*. ¶¶

112-13. When added to the initial undisputed damages, the final agreed total of Plaintiffs' damages was $460,073.02, a mere $670.93 less than the damage determination reached by the licensed contractor and submitted to the Defendants ten months earlier. *Id*. ¶¶ 113-14. But by the time the Adjuster Defendants submitted their report and recommendation, Real Legacy was in liquidation, and Plaintiffs are still owed $151,073.02 in additional undisputed dwelling damages, the $64,927.43 holdback on dwelling damages, and the $3,415.20 holdback on contents damages.

## II. Procedural History

Plaintiffs brought claims of breach of contract, breach of the duty of good faith and fair dealing, bad faith, breach of fiduciary duty, fraud in the inducement, unfair trade practice, misrepresentation, and negligence against the AARP Defendants, GCSM, CSMPR, and Overseas. Dkt. No. 1-1. Plaintiffs brought claims of breach of contract and tortious interference with contractual relations against the Adjuster Defendants. *Id*.

The AARP Defendants removed the case to this Court in October 2019. Dkt. No. 1. All Defendants filed motions to dismiss.[4] Dkt. Nos. 21, 23, 29. In March 2021, Judge Malachy E. Mannion[5] ruled on the motions to dismiss and entered an order which: (1) granted the AARP Defendants' motion with respect to the unfair trade practice claim and denied it as to all other counts; (2) granted the Adjuster Defendants' motion; and (3) granted GCSM and CSMPR's motion as to the unfair trade practice claim and denied it as to all other counts. Dkt. Nos. 87, 88. After the ruling on the motions to dismiss, the remaining Defendants answered. Dkt. Nos. 90, 94. Thus, in June 2021, the Court entered

---

[4] Overseas never filed a responsive pleading or otherwise participated in the case.
[5] The Honorable Malachy E. Mannion, District Judge for the Middle District of Pennsylvania, is sitting by designation on this case.

a scheduling order including, inter alia, a fact discovery deadline of November 30, 2021. Dkt. No. 100.

In August 2021, Plaintiffs filed a motion for leave to amend their Complaint, Dkt. No. 110, which the Court granted, Dkt. No. 123. The Amended Complaint eliminated two claims: the unfair trade practice claim against the AARP Defendants, GCSM, and CSMPR and the tortious interference claim against the Adjuster Defendants; it also asserted the breach of contract claim against the Adjuster Defendants under a third-party beneficiary theory and included a new gross negligence claim against the Adjuster Defendants. Dkt. No. 125. All underlying factual allegations regarding the policy, hurricane, and loss adjustment process and the other Counts remained identical. *Id*. The AARP Defendants answered. Dkt. No. 128. The Adjuster Defendants, GCSM, and CSMPR filed second motions to dismiss. Dkt. Nos. 131, 146.[6]

In April and May 2022, while briefing on the motions to dismiss was pending, the parties engaged in discovery, serving Rule 26 disclosures, other discovery, subpoenas, interrogatories, and requests for production. Dkt. Nos. 154-157, 159, 160. Discovery continued from June to September 2022,[7] with parties serving requests, responses, and notices of depositions. Dkt. Nos. 172-178, 184-187, 189-192, 194, 197-199. In September 2022, Judge Mannion ruled on the pending motions to dismiss, granting in part and

---

[6] GCSM and CSMPR twice filed their motion to dismiss in a fashion that did not comply with the Court's local rules. Dkt. Nos. 144, 145.

[7] In May 2022, Plaintiffs moved to extend discovery and case deadlines, Dkt. No. 162; the Court granted this motion. Dkt. No. 164. In August 2022, the parties jointly filed a motion to extend factual discovery and other deadlines, Dkt. No. 182, which the Court granted, providing a new fact discovery deadline of November 15, 2022. Dkt. No. 183.

denying in part GCSM and CSMPR's motion[8] and denying the Adjuster Defendants' motion. Dkt. No. 201, 202.

In October 2022, the AARP Defendants filed the pending motion for protective order, asking the Court to enter their proposed protective order under Rule 26(c) to prevent public dissemination of AARP's confidential licensing contacts. Dkt. No. 210. It explained that, in discovery, Plaintiffs requested "any and all documents relating to contracts between the AARP Defendants and any other Defendant and/or Real Legacy Assurance Company, Inc." Dkt. No. 211 at 2-3. The AARP Defendants further argued that, though the contracts between Real Legacy and AARP were responsive to this request, they contained proprietary, highly negotiated terms that governed the relationships between these parties; according to the AARP Defendants, disclosure of such information would allow competitors access to confidential information and harm the AARP Defendants in future contract negotiations. *Id.* at 3. The AARP Defendants argued that they had met their burden to show that a protective order was warranted because their contract terms were commercial information worthy of protection, and good cause existed to invoke the Court's protection. *Id.* at 4-5 (citing *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 889–90 (E.D. Pa. 1981)). Additionally, to support a finding of good cause, they submitted a Declaration from Todd Wilson, the Director of Insurance Relationships at AARP, averring that the contracts contained terms that AARP frequently uses in agreements with other licensees that are the result of competitive, sensitive negotiations and that revealing the terms would damage AARP's negotiating power. *Id.* at 7-8; Dkt. No. 211-1 (Decl. of Wilson).

---

[8] Effectively, the Court ruled that Plaintiffs failed to properly serve CSMPR and granted its motion to dismiss, but found that all claims remained against GCSM. Dkt. No. 201.

The motion included a proposed protective order, which generally allowed the parties to designate certain information as confidential or highly confidential and governed the disclosure of and procedures for handling all confidential information. Dkt. No. 210-1. Specifically, it defined confidential information as distinct from highly confidential information, with confidential information including "any material which contains any trade secret or other confidential research, development, or commercial information" (internal quotation marks omitted). Highly confidential information was defined as:

> any Confidential Information that . . . is of a highly proprietary or technical nature constituting trade secrets or competitively sensitive information such as financial or pricing data that could potentially be used by (1) the requesting party, or (2) expert consultant or witness engaged or purposes of this matter, or (3) a non-party to the litigation, for commercial use or otherwise to harm competition or the competitive position of the producing party or any other party or entity.

Dkt. No. 210-1 ¶ 3. The protective order also included provisions regarding disclosure of both types of information. *Id*. ¶¶ 4, 7. Confidential information could be disclosed to: (1) counsel and assisting personnel; (2) the parties and certain of their employees; (3) qualified persons transcribing or recording testimony; (4) experts and their consultants and staff; (5) the Court and its officers; and (6) other persons by written agreement of the parties. *Id*. ¶ 4. In contrast, highly confidential information could be disclosed only to: (1) counsel and assisting personnel; (2) the Court and its officers; and (3) qualified persons transcribing or recording testimony. The proposed protective order also provided that all confidential information would be available, subject to the same restrictions, to the parties in the related Superior Court cases and that confidential information could be

*Miller v. AARP Services, Inc.*
1:19-cv-00049-MEM-EAH
Memorandum Opinion
Page 9

used on appeal, subject to the parties negotiating a new protective order governing that action. *Id*. ¶¶ 5-6. Plaintiffs did not file an opposition to the motion for protective order.[9]

The Court held a hearing on the motion on April 4, 2023. Dkt. No. 262. At the outset, Plaintiffs stated that they did not oppose the entry of a protective order, but that they could not agree to the terms of the proposed protective order as written. *Id*. Plaintiffs confirmed that their concerns with the language were the same as those laid out in the email discussion attached to the motion. *Id*. Specifically, Plaintiffs asked to: (1) include a labelling provision wherein the parties would have to indicate the type of information to be designated confidential; (2) have a specific, delineated provision permitting the use of confidential information as evidence at hearings and trial and as part of an appendix on appeal; and (3) include a provision that experts have access to highly confidential information. *Id*.

Regarding the labelling requirement, Plaintiffs argued that each document should be specifically labelled as "trade secret" or "pricing list" so that the basis for confidentiality was apparent on the face of each document. *Id*. The AARP Defendants responded that this specific labelling was unnecessary given the distinction in the definitions of confidential and highly confidential information. *Id*. Moreover, a labelling requirement could lead to discovery disputes if the parties disagreed on the designation.

---

[9] Though Plaintiffs did not file an opposition, in their motion, the AARP Defendants recounted the failed negotiation over the protective order and attached emails from Plaintiffs' counsel that detailed Plaintiffs' objections. Specifically, Plaintiffs were concerned about: (1) the lack of substantive difference in identifying confidential information/highly confidential information and the lack of a requirement to label the nature of the information; (2) including a provision that made clear that all confidential information would be available for use in the Superior Court cases, at hearings and trials, and appendices on appeal; and (3) treating highly confidential information differently from confidential information and the lack of expert access to highly confidential material. Dkt. No. 211-3.

*Id*. After discussion with the parties, the Court agreed that the existing definition provision was sufficiently clear and informed them that any protective order entered by the Court would not contain a labelling requirement and resolved the issue. *Id*.

The parties discussed the provision regarding factfinder access, with the AARP Defendants pointing out that the proposed order contained a provision that "[n]othing in this Protective Order will be construed to affect the use of any document, material or information at any trial or hearing . . . ." *Id*.; *see also* Dkt. No. 210-1 ¶ 20. However, Plaintiffs remained concerned about the lack of a provision allowing confidential information to be part of an appellate case appendix. *Id*. The AARP Defendants agreed that the word appeal could be added to that paragraph, which resolved the issue. Dkt. No. 262.

Regarding expert access, Plaintiffs argued for inclusion of a provision that experts could access highly confidential information[10] if they agreed to abide by the terms of the protective order. *Id*. The AARP Defendants contended that this was inappropriate, as any experts would likely be insurance experts whose disclosure of the contract terms—inadvertent or otherwise—could be devastating to AARP's future negotiating power. *Id*. Further, they contended that the provision of the proposed protective order stating that parties could challenge the designation of any confidential information by petitioning the Court to negate the designation after an informal meet and confer would be sufficient to afford expert access. *Id*. Plaintiffs noted, and the Court agreed, that this process was insufficient, given that Plaintiffs may agree with a "highly confidential" designation, but

---

[10] At the hearing, the AARP Defendants explained that they would designate the AARP-Real Legacy contracts as highly confidential, so the discussion primarily centered around these contracts. Dkt. No. 262.

still want to provide the information to their experts if it was relevant to their case. *Id*. After a lengthy colloquy with the parties discussing multiple solutions, the Court suggested creating a mechanism that permitted counsels to first access highly confidential information and then, if they felt expert disclosure was necessary, to notify opposing counsels and involve the Court if necessary. *Id*. However, no provision was finalized at the hearing. *Id*.

The Court also discussed the confusion in collectively referring to both confidential and highly confidential information as "Confidential Information," and suggested that the parties rewrite the protective order using a different term. *Id*. Thus, after the hearing, the primary remaining issue was expert disclosure. To that end, the Court ordered the parties to meet and confer by April 11, 2023 and submit a joint proposed protective order by April 18, 2023 which would address the remaining unresolved issues from the hearing. *Id*.

Instead, on April 18, 2023, Plaintiffs filed a "Notice of Inability to Reach Agreement Regarding the AARP Defendants' Request for a Protective Order." Dkt. No. 264. Plaintiffs stated that an "agreement as to some issues was achieve [sic] but that the parties could not reach agreement regarding the submission of Highly Confidential information and documents to consultants and experts." *Id*. Plaintiffs also attached the AARP Defendants' most recent proposed version of the protective order, Dkt. No. 264-1, and their most recent proposed version, Dkt. No. 264-2. The AARP Defendants filed a cross-notice, which included the original proposed protective order, the latest proposed protective order, a redlined version of the original proposed protective order, and Plaintiffs' proposed protective order. Dkt. Nos. 265, 265-1, 265-2, 265-3, 265-4. The cross-notice detailed the revised language and the discussions during the meet and confer, specifically noting that

the AARP Defendants' revised proposed protected order set forth a mechanism by which parties could resolve expert disclosures. Dkt. No. 265-2 ¶ 14. The AARP Defendants explained that Plaintiffs felt that this mechanism was inappropriate because it required revealing the identity of their consulting experts (and thus Plaintiffs' counsel's work product) prior to their review of said highly confidential information.[11]

## APPLICABLE LEGAL STANDARD

Rule 26(c)(1) provides that the court, for "good cause," may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The order may, as relevant here, "require[] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). As explained by a district court in this Circuit:

> Analysis of protective orders under Rule 26(c)[] requires three lines of inquiry. First, is the matter sought to be protected a trade secret or other confidential research, development, or commercial information which should be protected? Second, would disclosure of such information cause a cognizable harm sufficient to warrant a protective order? Third, has the party seeking protection shown good cause for invoking the court's protection?

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 889–90 (E.D. Pa. 1981) (internal quotation marks omitted).

Once the Court determines that the entry of a protective order is appropriate, the scope of that protective order is inherently discretionary. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984) ("To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."); *Kuhns v. City of Allentown*, 264 F.R.D. 223, 228 (E.D. Pa. 2010) ("It is

---

[11] Plaintiffs did not include this information in their submission to the Court, but their suggested language in their draft of the proposed protective order bore this concern out.

axiomatic that a trial court has broad discretion to fashion discovery orders."). Indeed, "the court, in its discretion is authorized by [Rule 26(c)] to fashion a set of limitations that allows as much relevant material to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests—including privacy and other confidentiality interests—that might be harmed by the release of the material sought." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).

## ANALYSIS

As an initial matter, the parties agree that entry of a protective order is appropriate in this case and that the Real Legacy-AARP contracts are subject to protection.

The parties having agreed that the information they are seeking to protect is subject to a protective order, the only unresolved issue is how and to whom that information may be disclosed. At the hearing, the parties had three primary disputes over the terms of the protective order, specifically, the inclusion of: (1) a labelling provision wherein the parties would have to indicate the type of information to be designated confidential; (2) a provision permitting the use of confidential information as evidence at hearings and trial and as part of an appendix on appeal; and (3) a provision governing when and how experts could access highly confidential information. At the hearing, with the Court's assistance, the parties resolved the first and second issues, and both proposed protective orders reflect the same. Thus, the only issue for this Court to address is the language in the protective order concerning the disclosure of highly confidential information to experts which remains in dispute between the parties.

As discussed at the hearing, Plaintiffs argued for inclusion of a provision that experts could access highly confidential information if they agreed to abide by the terms

of the protective order. *Id*. The AARP Defendants contended that this was inappropriate, as any experts would likely be insurance experts whose disclosure of the contract terms—inadvertent or otherwise—could be devastating to AARP's future negotiating power. *Id*. The Court suggested creating a mechanism that permitted counsels to first access highly confidential information and then, if they felt expert disclosure was necessary, to notify opposing counsels and involve the Court if necessary. *Id*. Plaintiffs do not discuss the basis for their objections in their notice of inability to reach agreement. Dkt. No. 264. However, the cross-notice detailed the revised language and the discussions during the meet and confer, explaining that Plaintiffs felt that the AARP Defendants' suggested mechanism was inappropriate because it required revealing the identity of their consulting experts and potential trial experts (and thus Plaintiffs' counsel's work product) prior to their review of said highly confidential information.

Per the notices and attached proposed protective orders, the only two paragraphs that remain in dispute are those governing expert disclosure. Dkt. No. 264-2 ¶¶ 7, 14; Dkt. No. 265-2 ¶¶ 7, 14. Specifically, Plaintiffs' proposed protective order includes a provision that all highly confidential information be made available to "experts and consultants and their staff who are employed for the purposes of this litigation who have executed the form affixed . . . thereby agreeing to be bound by the terms of this Protective Order." Dkt. No. 264-2 ¶ 7. Accordingly, Plaintiffs' suggested provision regarding a disclosure mechanism reads as following:

> If a party to this Protective Order wishes to disclose information designated as "Highly Confidential" to consulting or testifying experts or consultants and their respective staff who are employed for the purposes of this litigation, that party and the designating party shall make a good-faith attempt to reach an agreement that will allow such disclosure. The party wishing to disclose information designated as "Highly Confidential" to an expert or consultant shall (i) inform the designating party that the information will be disclosed

> to an expert or consultant and *(ii) have the expert or consultant sign the form affixed hereto as Appendix 1, the original of which shall be kept by the party engaging the expert or consultant. [sic] the basis on which any such disclosure would be made [.][] Should the disclosing party object to the disclosure under this paragraph, all parties will be notified of that objection and the parties will meet and confer as required by court rules to attempt to resolve the conflict.* Factors that may influence such efforts include whether the document containing information that the party wishes to disclose to an expert or consultant can be redacted so as to allow disclosure of information that is not Highly Confidential. Nothing in this paragraph 14 shall be construed to require a party to disclose Privileged Information (as defined in paragraph 20) to any other party *and specifically any information covered by the work product doctrine to any other party. Additionally nothing in this paragraph 14 shall be constructed [sic] to require a party to disclose any information inconsistent with Court Rules and the current Case Management Order.* If efforts to reach an agreement on such disclosure are not successful, either party may seek the Court's assistance. In no case may Highly Confidential information be shown to any party outside those identified in paragraph 7(a), 7(b), 7(c), or 7(d) absent either leave of the Court or the designating party's agreement.

Dkt. No. 264-2 ¶ 14 (emphasis added).[12]

In contrast, the AARP Defendants' proposed protective order does not contain the disclosure provision in paragraph 7, but does provide the following mechanism regarding expert disclosure:

> If a party to this Protective Order wishes to disclose information designated as "Highly Confidential" to consulting or testifying experts or consultants and their respective staff who are employed for the purposes of this litigation, that party and the designating party shall make a good-faith attempt to reach an agreement that will allow such disclosure. The party wishing to disclose information designated as "Highly Confidential" to an expert or consultant shall (i) inform the designating party of a desire to disclose the information, (ii) explain the basis on which any such disclosure would be made, including the basis on which any such disclosure would be necessary for the expert's or consultant's opinions in this action, and (iii) inform the designating party of the employment information of any such expert or consultant, or other information that would enable the designating party to assess whether disclosure of "Highly Confidential" information to such expert would enable its commercial use or otherwise to harm competition or the competitive position of the producing

---

[12] The Court is citing to the version of the Plaintiffs' proposed protective order that they submitted in their notice, Dkt. No. 264-2, because the version of Plaintiffs' draft protective order submitted by the AARP Defendants at Dkt. No. 265-4 is not identical.

>           party or any other party or entity. Factors that may influence such efforts include whether the document containing information that the party wishes to disclose to an expert or consultant can be redacted so as to allow disclosure of information that is not Highly Confidential. Nothing in this paragraph 14 shall be construed to require a party to disclose Privileged Information (as defined in paragraph 20) to any other party. If efforts to reach an agreement on such disclosure are not successful, either party may seek the Court's assistance. In no case may Highly Confidential information be shown to any party outside those identified in paragraph 7(a), 7(b), 7(c), or 7(d) absent either leave of the Court or the designating party's agreement.

Dkt. No. 265-2 ¶ 14.

As to the terms of the protective order, Plaintiffs' proposed provision for expert disclosure does not contemplate any mechanism for discussion among counsels prior to disclosure. Dkt. No. 264-2 ¶¶ 7, 14. It allows experts access to highly confidential information without advance notice, subject only to signing the appendix form, and would not allow the AARP Defendants to assess the harm of potential disclosure prior to its occurrence. *Id*. However, in contrast, the AARP Defendants' proposed provision goes a step too far in requiring Plaintiffs to "explain the basis on which any such disclosure would be made, including the basis on which any such disclosure would be necessary for the expert's or consultant's opinions in this action."Dkt. No. 265-2 ¶ 14. Plaintiffs contend that this disclosure mechanism proposed by the AARP Defendants runs afoul of the protections on work-product, and the Court agrees that this portion of the provision may require Plaintiffs' counsel to disclose her trial strategy and potentially communications with the experts, which are subject to protection. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (noting that work-product protection ensure the attorney's ability to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference."); Fed.

R. Civ. P. 26(b)(4)(C) (protecting communications between a party's attorney and expert witness subject to specified exceptions).

Thus, in balancing the competing interests of the parties, the Court finds that paragraph 14, as written in the AARP Defendants' proposed protective order, goes too far in requiring Plaintiffs to explain the basis on which disclosure should be made, including describing why the disclosure is necessary for the expert's or consultant's opinion, which inherently involves discussion of said expert's opinion and its scope. This may require Plaintiffs to disclose their trial strategy, which they have a strong interest in protecting. *See Sporck v. Peil*, 759 F.2d 312, 316 (3d. Cir. 1985) ("Such material [including opinion work product such as an attorney's legal strategy and intended lines of proof] [are] accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases."). Accordingly, the Court will modify paragraph 14, and it will read as follows:

> If a party to this Protective Order wishes to disclose information designated as "Highly Confidential" to consulting or testifying experts or consultants and their respective staff who are employed for the purposes of this litigation, that party and the designating party shall make a good-faith attempt to reach an agreement that will allow such disclosure. The party wishing to disclose information designated as "Highly Confidential" to an expert or consultant shall (i) inform the designating party of a desire to disclose the information and (ii) inform the designating party of the employment information of any such expert or consultant, that would enable the designating party to assess whether disclosure of "Highly Confidential" information to such expert would enable its commercial use or otherwise harm competition or the competitive position of the producing party. Factors that may influence such efforts include whether the document containing information that the party wishes to disclose to an expert or consultant can be redacted so as to allow disclosure of information that is not Highly Confidential. Nothing in this paragraph 14 shall be construed to require a party to disclose Privileged Information (as defined in paragraph 20) to any other party. If efforts to reach an agreement on such disclosure are

>not successful, either party may seek the Court's assistance. In no case may Highly Confidential information be shown to any party outside those identified in paragraph 7(a), 7(b), 7(c), or 7(d) absent either leave of the Court or the designating party's agreement.

As modified, this provision ensures that the AARP Defendants receive advance notice when Plaintiffs wish to disclose highly confidential information to an expert. Further, requiring Plaintiffs to disclose the employment status and history of said expert will allow the AARP Defendants to ascertain the severity and scope of the risk in any disclosure. However, it also ensures that Plaintiffs are not forced to reveal their trial strategy or any work-product in the form of their counsels' communications with an expert. This provision more appropriately considers both parties' concerns over expert disclosure.

## CONCLUSION

In sum, the entry of a protective order is warranted, and the Court's modified protective order will best serve the interests of both parties.

An appropriate Order accompanies this Memorandum Opinion.

ENTER:

Dated: May 5, 2023

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE